J-A27042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: ESTATE OF MARIAN BURRELL, DEC. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: PAMELA K. BURRELL AND RICARDO BURRELL | No. 2624 EDA 2015 |

Appeal from the Decree July 17, 2015
in the Court of Common Pleas of Philadelphia County Orphans' Court
at No(s): Control No. 141963
O.C. No. 805 DE of 2013

BEFORE: PANELLA, LAZARUS, FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED FEBRUARY 21, 2017**

Pamela K. Burrell ("Pamela") and Ricardo Burrell ("Ricardo") (collectively "Appellants"), co-executors of the estate of Marian Burrell ("Decedent"), appeal from a decree of the Philadelphia Court of Common Pleas, Orphans' Court Division, awarding Rodney Burrell ("Rodney") $10,154.59, comprised of his one-fifth shares of (1) proceeds of the sale of Decedent's residence, (2) monies distributed to non-beneficiaries of Decedent's will, and (3) the remaining balance in the estate account after distribution, plus interest. Appellants argue that the Orphans' Court erred by refusing to subtract two items from this award: (1) legal fees and expenses that Appellants incurred in an action to eject Rodney from

---

[*] Former Justice specially assigned to the Superior Court.

Decedent's residence[1] after her death; and (2) reduction in the sale price of the residence that Rodney caused by refusing to leave the residence after Decedent's death. We agree with Appellants' first argument but not their second. Accordingly, we affirm in part, reverse in part and remand for further proceedings.

The Orphans' Court summarized the factual and procedural history of these proceedings as follows:

> [Decedent] died testate on December 2, 2011. She was survived by her five children[:] Ricardo, Pamela, Rodney, Courtney Burrell, and Mandel Burrell. Decedent's [w]ill named Ricardo and Pamela as co-executors. Decedent's [w]ill left the residuary of the estate to her children in equal shares.
>
> On March 17, 2012, there was an [a]greement of [s]ale to sell the 17th Street property for $53,000.00. On April 6, 2012, pursuant to [s]ection 13(B)(2) of the [a]greement of [s]ale, Ricardo and Pamela agreed to the buyer's termination of sale and agreed to return the buyer's $1,000.00 deposit. On February 13, 2013, the 17th Street property sold for $39,482.37.
>
> The First and Final Account indicates that Rodney was paid a $10,297.17 disbursement from [Decedent's] Estate . . . On June 24, 2014, Rodney filed a petition seeking to have Ricardo and Pamela file an [a]ccounting and show cause why he was not entitled to his 20% share of the proceeds from the sale of [the 17th Street property]. In response, [Appellants filed an answer asserting] that

---

[1] Decedent's residence was located at 3847 North 17th Street, Philadelphia, Pennsylvania. We will refer to it below as "the 17th Street property."

Rodney['s] share was exhausted by the legal fees they paid to evict[2] him from the 17th Street property.

The [Orphans'] Court held a hearing[3] and received testimony on July 14, 2015.

At the hearing, Rodney presented two witnesses. Rodney['s] first witness was his brother, Ricardo, who was called on cross-examination. He testified that as co-executor[,] he along with Pamela disbursed $3,000.00 each to Noah Burrell and Shirley Johnson, despite the fact that they were not included in the [w]ill. He also testified that Part 10 of the [w]ill allowed him to disinherit a beneficiary under the [w]ill. He admitted that while his brother Rodney contested the sale of the 17th Street property, he had not formally contested the [w]ill. He testified that Rodney only received approximately $10,000.00 and did not receive his share of the proceeds from the sale because "he contested the sale of the house, that's why we lost the first sale." Ricardo further testified that on March 23, 2012, he changed the locks to the [17th Street] property and prevented Rodney['s] entry by not giving him a key.

Furthermore, Ricardo asserted that the initial [a]greement of [s]ale was not finalized because Rodney "created false documents, [hung] several signs in the windows trying to discourage the seller and neighbors, [and] created a Burrell trust fund where he was the only recipient of it." However, he added that because he lived

---

[2] Appellants' answer actually asserted that they paid legal fees to "eject" Rodney from the 17th Street Property. Answer To Pet. For Citation at ¶ 7.

[3] The certified record did not include the hearing transcript. The Note to Pa.R.A.P. 1921 provides, however: "[W]here the accuracy of a pertinent document is undisputed, the Court [can] consider that document if it was in the Reproduced Record, even though it was not in the record that had been transmitted to the Court." Note, Pa.R.A.P. 1921 (citing **Commonwealth v. Brown**, 52 A.3d 1139, 1145 n. 4 (Pa. 2012)). Because the hearing transcript in this case is part of the reproduced record, and because neither party disputes its accuracy, we will consider it. **See id**.

in Washington, D.C., he did not see the signs in person, only in pictures. Additionally, he stated that he and Pamela had to file an ejectment action[4] "[b]ecause that was the only way we could resell the house." He added that they needed Rodney to be removed from the property in order to sell it.

Rodney also testified. He testified that he moved back into the 17th Street property in 2009 after he lived in Atlanta, Georgia for a period of time. He testified that before the ejectment action was filed, he was never asked to move out. He further stated that he was locked out by his brother on March 23, 2012. He elaborated that he found out the locks had been changed after his brother Courtney Burrell called him and indicated that his belongings would be left on the porch that same day if he did not come and retrieve them. He stated that he had to change the locks again on March 29, 2012 to regain entry to the property. He also testified that before the property was put on the market for sale, a number of family members came into the home and took many of the items contained inside. He added that while this occurred, the police were called, but that the police declined to take action because it was a civil dispute. He said originally, he was in agreement to sell the house, but it was not until the incident when the police were called that he began to oppose the sale.

Additionally, regarding the sale of the property, Rodney testified that he allowed a lockbox to be placed on the front door to allow the real estate agent and potential buyers to tour the property. He stated that during the time the property was listed for sale, he had not prevented potential buyers from inspecting the property. He testified that he did not remove the real estate sale signs from the property. He added that he did post a sign in the window to deter criminal activity of those who may have thought the house did not have anyone living in it. He also testified that after the sale of the house occurred on February 13, 2013, he did not receive any money. Finally,

---

[4] It is undisputed that Ricardo and Pamela prevailed in the ejectment action against Rodney. R.R. at 29 (hearing transcript).

he stated that there was no agreement between his siblings to give $3,000.00 each to Noah Burrell and Shirley Johnson.

In Ricardo and Pamela['s] case-in-chief, both Ricardo and Pamela testified. Pamela testified that all of the siblings were in agreement that the 17th Street property should be sold. She also stated that she and Ricardo ultimately decided to file an ejectment action because of outstanding utility bills. She also testified that as a result of the ejectment action legal fees were incurred in the amount of $6,720.28. With regard to the two $3,000.00 disbursements, she also stated that she and her brother felt that, as executors, they could give their aunt and uncle "thank you" gifts in the amount of $3,000.00 each because they had been there "through thick and thin." She verified that after the distributions, $2,416.00 remained in the [e]state, but that $1,500.00 was used to retain an attorney on June 25, 2014. She stated that Rodney had received $10,000.00 on December 31, 2012 after she divided her mother's insurance policy between her siblings. She also testified that she agreed with Ricardo that the [n]o-[c]ontest [p]rovision of the [w]ill prohibited Rodney from taking his share of the proceeds of the sale of the property. Despite this, she admitted that no court gave her the authority to disinherit her brother.

Lastly, Ricardo briefly testified on direct examination. He stated that on March 30, 2012, he and his cousin were unable to gain access to the property because Rodney had changed the locks. He also admitted that when he previously changed the locks, he did not provide Rodney with a key. He also testified that when the real estate agent sent him the termination of the [a]greement of [s]ale document, he did not question his realtor about why he had to sign it.

Orphans Ct. Op., 1/6/16, at 1-5 (with minor stylistic revisions).

The Orphans' Court decreed in relevant part:

4. [Rodney] received a one-fifth share of the residuary estate in the amount of $10,297.17 as a partial disbursement;

5. [Appellants], as [c]o-[e]xecutors of the estate at issue, bore the sole responsibility of administering said estate according to the provisions set forth in [D]ecedent's [l]ast [w]ill and [t]estament, and furthermore, owed a fiduciary duty to all legatees, including [Rodney], without favoring or benefitting any beneficiary over another within an equal distributive class, namely, [Rodney]'s three brothers and one sister who also were entitled to a one-fifth share of the residuary estate;

6. [Appellants] distributed the proceed[s] of $39,482.57 from the sale of [the 17th Street property] in four equal shares, thereby, excluding [Rodney] from his one-fifth share or $7,896.51;

7. [Appellants] made distributions of . . . $6,000.00 . . . or . . . $3,000.00 . . . each to Noah Burrell and Shirley Johnson, neither of whom were named beneficiaries under the [l]ast [w]ill and [t]estament of [Decedent];

8. [Appellants] did not give [Rodney] his one-fifth share of the $2,416.69 balance remaining after distribution of the estate assets;

9. [Appellants'] contention that the estate incurred legal expenses in evicting [Rodney] is without merit as this Court finds the March 13, 2012 lockout of [Rodney] precipitated the need for formal ejectment and was done without court approval and in violation of [Rodney]'s rights;

10. [Rodney] at no time violated Part 10 the No-Contest Provision of [D]ecedent['s] [l]ast [w]ill and [t]estament;

11. [Appellants] never filed a formal accounting prior to court order;

12. Based on the testimony and evidence presented at the July 14, 2015 hearing in this matter, the Court awards [Rodney] $7,896.51 from the sale of the estate['s] real estate, $1,200.00 for his share of monies distributed to non−beneficiaries under the [w]ill, $483.34 for [Rodney]'s one-fifth share [of] the estate account balance after

distribution, $574.74 representing simple interest for one year and no attorney fees for a total of . . . $10,154.59 with [Appellants] to be surcharged accordingly.

Decree, 7/17/15, at ¶¶ 4-12.

On August 14, 2015, Appellants filed a timely appeal to this Court.[5]

Both Appellants and the Orphans' Court complied with Pa.R.A.P. 1925.

Appellants raise four issues on appeal, which we have re-ordered for purposes of review:

> 1. Did the [Orphans'] [C]ourt err in reasoning that [Rodney's] actions did not create a chain of events which led to the granting of a formal ejectment due to [Rodney's] refusal to participate in the sales process and his unlawful occupation of the estate's property?
>
> 2. Did the Orphans' Court err in deciding that . . . Appellants' changing the locks on the estate['s] property was an illegal lockout rather than necessary steps to secure the property, in light of [Rodney's] efforts to frustrate the sale of the estate's property?
>
> 3. Did the Orphans' Court err in prohibiting testimony which would have explained . . . Appellants' need to file an action for ejectment against [Rodney]?
>
> 4. Did the [Orphans'] [C]ourt ignore [Rodney's] actions [which] caused the original sale agreement of $53,000.00 to be terminated which resulted in a $14,000.00 loss in the sale [of] the estate's property?

Appellants' Brief at 5.

---

[5] Although Appellants did not file exceptions to the Orphans' Court's decree, they were not required to do so under the rules then in effect, statewide Orphans' Court Rule 7.1 or Philadelphia Local Rules 7.1A or 7.1B. Thus, the absence of exceptions does not result in waiver of any issues.

In their first argument, Appellants contend that the Orphans' Court erred in refusing to deduct legal fees and expenses from the award to Rodney that Appellants were forced to expend to eject Rodney from Decedent's property. The Orphans' Court denied this deduction on the ground that Appellants performed an illegal "self-help eviction" by locking Rodney out of the property thirteen days before filing an ejectment action. Orphans' Ct. Op. at 7, 10. In so doing, the Orphans' Court opined, Appellants "acted with unclean hands." **Id.** at 10. We agree with Appellants.

> When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence. Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of [ ] discretion.

**Owens v. Mazzei**, 847 A.2d 700, 706 (Pa. Super. 2004). "If the court's findings are properly supported, an appellate court may reverse an Orphans' court's decision only if the rules of law on which it relied are palpably wrong or clearly inapplicable." **Id**.

The Orphans' Court erroneously determined that Appellants **evicted** Rodney. On the contrary, the record demonstrates that Appellants **ejected** Rodney from Decedent's property, and that Appellants are entitled to recover attorney fees and expenses for their successful ejectment proceeding.

Ejectment is a "possessory action" that "can succeed only if the plaintiff is out of possession, and if he has a present right to immediate possession." ***Wells Fargo Bank, N.A. v. Long***, 934 A.2d 76, 79 (Pa. Super. 2007) (citation omitted). Ejectment is a common law proceeding. ***See Siskos v. Britz***, 790 A.2d 1000, 1009 (Pa. 2002) (noting that filing of ejectment action would have entitled party to demand jury trial in the exercise of constitutional right to jury trial in common law proceeding).

An eviction is a statutory proceeding that occurs in a landlord-tenant relationship. ***See*** Landlord and Tenant Act of 1951, 68 P.S. §§ 250.501— 250.514. A landlord-tenant relationship "arises under a contract for possession of lands in consideration of rent to be paid therefor . . . A tenant is one who occupies land or the premises of another in subordination to the other's title, and with his assent, express or implied." ***In Re Wilson's Estate***, 37 A.2d 709, 710 (Pa. 1944) (citations omitted). Under certain statutorily prescribed conditions, the landlord has the right to commence eviction proceedings against a tenant.[6] It is impermissible, however, for landlords to evict tenants via self-help, or through actions not involving judicial process. ***See Williams v. Guzzardi***, 875 F.2d 46, 52 n. 13 (3d Cir. 1989) (analyzing Pennsylvania law).

---

[6] ***See*** 68 P.S. § 250.501(a) (following written notice, landlord can commence eviction proceedings "(1) upon the termination of a term of the tenant, (2) or upon forfeiture of the lease for breach of its conditions, (3) or upon the failure of the tenant, upon demand, to satisfy any rent reserved and due").

Here, the undisputed evidence demonstrates that (1) Decedent's residence was the property of her estate, (2) after Decedent's death, Appellants filed an action to eject Rodney from Decedent's residence because Rodney refused to leave the residence, and (3) Appellants prevailed against Rodney in the ejectment action.[7] There is no evidence that Decedent and Rodney had a landlord-tenant relationship, *i.e.*, a contractual relationship in which Rodney paid rent to Decedent. **See Wilson's Estate**, 37 A.2d at 710.

The evidence thus refutes the Orphans' Court's conclusion that Appellants engaged in a self-help eviction or acted with unclean hands. Appellants prosecuted an ejectment action against Rodney in good faith—an action that became necessary because Rodney refused to vacate Decedent's residence, and because Appellants needed him to leave in order to sell the residence. Indeed, Appellants **won** this ejectment action, a fact which is antithetical to the Orphans' Court finding that Appellants acted in bad faith.

Despite disagreeing with the Orphans' Court's reasoning, we have the authority to inquire whether an alternative reason exists for affirming its decree. **See In Re Estate of Klink**, 743 A.2d 482, 485 (Pa. Super. 1999)

---

[7] Philadelphia's civil docket also indicates that Appellants prevailed in their ejectment action. **See Burrell v. Burrell**, April Term, 2012, No. 629. The court granted judgment in that case to Appellants when Rodney did not file an answer to Appellants' motion for judgment on the pleadings. **Id.** Rodney appealed to this Court, which dismissed his appeal due to his failure to file a docketing statement. **See Burrell v. Burrell**, 3158 EDA 2012.

("this court may uphold the decision of a lower court if it can be sustained for any reason, even if the reasons given by the lower court to support its decision are erroneous"). In this instance, however, we can think of no alternative reason for affirming the Orphans' Court's decision. To the contrary, the record establishes that (1) Appellants had to file the ejectment action to facilitate the administration of Decedent's estate, (2) Appellants had to file the ejectment action due to Rodney's refusal to vacate Decedent's residence, and therefore (3) Rodney alone should be responsible for the attorney fees and expenses incurred because of this action. We conclude that the Orphans' Court erred by declining to deduct these attorney fees and expenses from Rodney's award.

Appellants' second argument is that the Orphans' Court erred by holding that Appellants' act of changing the locks on Decedent's residence was an illegal lockout. Based on our analysis of Appellant's first argument, we conclude that they are correct. The evidence demonstrates that Appellants engaged in valid ejectment proceedings against Rodney and therefore are entitled to attorney fees and expenses incurred during these proceedings.

Appellants' third argument is that the Orphans' Court erred in prohibiting testimony that would have explained Appellants' need to file an ejectment action against Rodney. Our conclusion above that Appellants had

a good faith reason for prosecuting an ejectment action renders this argument moot.

In their fourth and final argument, Appellants contend the Orphans' Court erred by failing to hold Rodney accountable for the drop in the sale price of Decedent's residence from $53,000.00 in the first agreement of sale to $39,482.37 in a subsequent agreement of sale. We disagree.

The evidence demonstrates that on March 17, 2012, Appellants entered an agreement to sell the 17th Street property for $53,000.00. On April 6, 2012, pursuant to section 13(B)(2) of the agreement, the buyer terminated the sale, and Appellants returned the buyer's down payment. On February 13, 2013, the 17th Street property sold for $39,482.37.

The evidence demonstrates that the first buyer backed out of the sale not because of Rodney's conduct but because of dissatisfaction with a home inspection. The Orphans' Court observed that the notice of termination of agreement of sale signed by both Appellants and the buyer cited section 13(B)(2) of the agreement of sale. Section 13(B)(2) provided in relevant part that "if the result of any inspection . . . is unsatisfactory to the Buyer, Buyer will, within the stated Contingency Period . . . terminate this Agreement by written notice to Seller with all deposit monies returned to the Buyer . . ." This evidence provided sufficient foundation for the Orphans' Court to conclude that Rodney should not bear the blame for the termination of the first sale and the resulting price drop from $53,000.00 to $39,482.37.

For these reasons, we vacate the Orphans' Court order and remand to the Orphans' Court for deduction of all attorney fees and expenses necessitated by the ejectment proceeding from Appellant's award.

Decree affirmed in part and reversed in part. Case remanded to Orphans' Court for further proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/21/2017